IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

DEC - 2 2011

Jamar T. Scott, )
    Plaintiff, )
)
v. ) 1:11cv25 (AJT/TCB)
)
Loretta Kelly, )
    Defendant. )

## MEMORANDUM OPINION

Jamar T. Scott, a Virginia inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges the defendant violated the First and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000-cc et seq., by enacting a policy that denied certain inmates access to religious services unless they went ninety consecutive days without a disciplinary charge.[1] Defendant filed a Motion for Summary Judgment along with a supporting memorandum and affidavit on May 13, 2011, and provided plaintiff with notice and opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed a response to defendant's Motion on May 20, 2011. Accordingly, this matter is now ripe for disposition. For the reasons which follow, the Court will grant defendant's Motion for Summary Judgment.

---

[1] Plaintiff also alleges that defendant's policy violates the Religious Freedom Restoration Act ("RFRA"). The RFRA was repealed by the Supreme Court in City of Boerne v. Flores, 521 U.S. 507 (1997). However, in 2000, Congress enacted the Religious Land Use and Institutionalized Persons Act ("RULIPA") and the Court affirmed the Act's constitutionality in the prison context in Cutter v. Wilkinson, 544 U.S. 709 (2005). Because district courts have a duty to construe pro se pleadings liberally, Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999), the Court will construe plaintiff's RFRA claims as claims brought under the RLUIPA.

1

## I. Background

Plaintiff, who is currently confined at Red Onion State Prison, alleges that during his incarceration at Sussex I State Prison he was "denied his constitutional right to practice his religion." Compl. at 5. According to plaintiff, defendant enforced a "privilege" and "non-privilege" pod policy.[2] Under this policy, prisoners in non-privileged pods could not attend religious services unless they went ninety consecutive days without receiving a disciplinary charge. Allegedly, plaintiff was confined to a non-privileged pod for almost two years. During that time, plaintiff alleges he was unable to attend religious services.

Plaintiff filed an informal complaint through the Sussex I State Prison grievance system regarding his inability to attend religious services on May 24, 2010, in which he stated, "I really don't believe that it's fair for the Warden to band [sic] me from going to religious services because I'm on a non-privilege pod." See Mem. in Supp. at Attach. at 6; ECF No. 15. The written response to the informal complaint is difficult to decipher; however, it is clear plaintiff must have been dissatisfied with it because he proceeded to file a formal grievance. Id. Plaintiff submitted his grievance on June 4, 2010. Id. at Attach. at 4. Prison officials returned the grievance to plaintiff on June 8, 2010, indicating that plaintiff's grievance did not meet the criteria for acceptance because it did not provide sufficient information. Id. at Attach. at 5. The returned grievance instructed the plaintiff to list the dates during which he was banned from services and resubmit the grievance within five days. Id. Plaintiff alleges that he resubmitted the grievance on June 15, 2010, but it was again rejected for failing to comply with the intake

---

[2] Plaintiff explains that placement in a non-privileged pod is distinct from placement in segregation. Allegedly, prisoners in non-privileged pods are "in the main general population." For example, during visitation days, plaintiff alleges non-privileged pod prisoners share the "same visitation room at the same time as the rest of general population."

2

requirements, this time because it was filed beyond the filing period.[3] See Resp. to Mot. to Dismiss at 5-6; ECF No. 17. Plaintiff appealed the intake decisions to the Regional Ombudsman who upheld the intake decision on June 28, 2010. Mem. in Supp. at Attach. at 6; ECF No. 15. It is undisputed that plaintiff filed no additional grievances regarding his inability to attend religious services.

## II. Standard of Review

In reviewing a Motion for Summary Judgment, courts must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is made and supported . . . [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy

---

[3] Defendant's Motion for Summary Judgment does not reference this resubmittal by plaintiff. However, as plaintiff points out in his Response to Defendant's Motion for Summary Judgment, the front of the grievance is stamped "received" on both June 7, 2010, and June 15, 2010. Additionally, the date June 16, 2010, is written on the back of the grievance next to the mark indicating that the grievance was being denied as untimely. Resp. to Mot. to Dismiss at 5-6; ECF No. 17. Nevertheless, this dispute is immaterial because both plaintiff and defendant acknowledge that after plaintiff appealed the intake decision to the Regional Ombudsman he filed no additional grievance regarding his inability to attend religious services. Therefore, this dispute will not affect the outcome of the suit. See Anderson 477 U.S. at 248 ("[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

3

a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

## II. Analysis

Defendant argues that plaintiff's claim must be dismissed because plaintiff failed to exhaust the institutional grievance procedure. See Mem. in Supp. at 2-3; ECF No. 15. Plaintiff is steadfast in his contention that he fully exhausted his administrative remedies before filing suit in federal court. See Resp. to Mot. to Dismiss at 6; ECF No. 17.

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. In the context of prisoner suits, proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to further pursue their claim in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id.

However, the benefits of proper exhaustion are only realized if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "*unless the grievant complies with the system's critical procedural rules.*" Id. at 95 (emphasis added); see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As the Supreme Court of the United

4

States explained, if a prisoner could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner who did not want to participate in the prison grievance process could avoid the process altogether by simply filing a prison grievance he knew would be dismissed on a procedural deficiency. Woodford, 548 U.S. at 96. To prevent this type of abuse, this Circuit has held that a prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies. Moore, 517 F.3d at 725, 729.

To determine whether plaintiff fully exhausted his administrative remedies in this case, it is necessary to examine the relevant portions of the Virginia Department of Corrections' ("VDOC") grievance procedure. According to the VDOC Department Operating Procedure ("DOP"), an inmate must first attempt to resolve any issues concerning conditions of confinement informally by filing an informal complaint. DOP 866.1 at 6. Prison officials must respond to the informal complaint within fifteen days. Id. After seeking informal resolution, an inmate may file a regular grievance to the warden or superintendent. Id. at 6-7. If the grievance meets the intake requirements, the grievance will be logged and a prison official will respond to the grievance. Id. at 7. Depending on the issue grieved there may be up to two additional levels of appeals the prisoner must complete before fully exhausting his administrative remedies. Id. at 8-9.

If the grievance does not meet the intake requirements, "the grievance should be returned to the offender within two working days from the date received by completing the *Intake* section" on the back of the grievance form. Id. at 7. If the prisoner wants further review of the intake decision he may send the returned grievance form within five calendar days to the

appropriate Regional Ombudsman for a determination. Id. The Regional Ombudsman decision is final, as "there is no further review of intake decisions." Id.

In this case, plaintiff failed to exhaust his administrative remedies because Sussex I State Prison never had the "fair opportunity" to examine the merits of plaintiff's grievance. Woodford, 548 U.S. at 95. Although plaintiff attempted to file a formal grievance, the grievance failed to meet acceptable intake criteria and prison officials, in accordance with the DOP, returned the grievance to the plaintiff. Hudson Aff. at 2, ECF No. 15. The proper return of plaintiff's improperly filed grievance is not sufficient to exhaust his administrative remedies. Moore, 517 F.3d 729. Plaintiff's appeal of the intake decision to the Regional Ombudsman also failed to exhaust his administrative remedies because the Ombudsman only considered the propriety of the intake decision and did not review the merits of plaintiff's claim. Based on the record, plaintiff failed to filed another grievance regarding his inability to attend religious services. Thus, plaintiff's contention that he exhausted his administrative remedies is incorrect, and Summary Judgment must be entered in favor of the defendant.

## IV. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted, and summary final judgment will be entered in her favor. An appropriate order and judgment shall issue.

Entered this 2nd day of December 2011.

Anthony J. Trenga
United States District Judge

Alexandria, Virginia